# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

**No. 06-5227**

FILED

JUL **3** 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**September Term, 2006**

05cv01466

Mittal Steel USA ISG, Inc.,
      Appellant

v.

Samuel W. Bodman, Secretary, Department
of Energy and George B. Breznay, Director,
Office of Hearings and Appeals, U.S.
Department of Energy,
      Appellees

Filed On: March 28, 2007 [1031520]

**MANDATE**

Pursuant to the provisions of Fed. R. App.Pro.41(a)

ISSUED:

BY:

ATTACHED: ___ Amending Order
___ Opinion
___ Order on Costs

Appeal from the United States District Court
for the District of Columbia

Before: GRIFFITH, *Circuit Judge*, and EDWARDS and WILLIAMS, *Senior Circuit Judges*.

## J U D G M E N T

    This cause was considered on the record from the United States District Court for the District of Columbia, and was briefed by counsel. It is

    **ORDERED** and **ADJUDGED** that the judgment of the District Court is hereby affirmed.

    In 2005, Mittal Steel USA ISG, Inc. ("Mittal") filed a motion with the Department of Energy ("DOE") requesting reconsideration of DOE's 1991 denial of a refund claim arising under the Emergency Petroleum Allocation Act ("EPAA"), 15 U.S.C. §§ 751-760h (1982). DOE denied the motion for reconsideration, and Mittal filed a complaint in the District Court. Mittal now appeals the District Court's grant of summary judgment in favor of DOE. *See Mittal Steel USA ISG, Inc. v. Bodman*, 435 F. Supp. 2d 106 (D.D.C. 2006).

A True copy:

United States Court of Appeals
for the District of Columbia Circuit

By: _____ Deputy Clerk

# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

**No. 06-5227**                                    **September Term, 2006**

"In 1973, Congress enacted the [EPAA, which expired in 1981], to alleviate the economic effects of an unexpected spike in the market price of crude oil. Pursuant to the enforcement provisions of the EPAA and a court-approved settlement order, DOE was authorized to collect overcharge funds from sellers who violated the price caps on crude oil put in place from 1973 to 1981 by the EPAA." *Id.* at 107 (footnote omitted). "DOE adopted a restitutionary policy with respect to non-parties, allowing them to submit claims in refund proceedings against the crude oil overcharge funds held in escrow." *Id.*

On April 29, 1983, National Steel Corporation ("NSC") and Weirton Steel Corporation ("Weirton Steel"), an employee owned corporation, executed an agreement which transferred NSC's interest in the Weirton facility to Weirton Steel. Subsequently, by agreement dated February 25, 2004, Weirton Steel sold Mittal all of its properties, assets, and rights. Previously, however, "[i]n 1989, NSC filed a claim against the DOE overcharge funds in escrow, asserting the right to a refund for the refined petroleum purchases made for its Weirton facility during the regulated period; this is the very right that [Mittal] now asserts." *Id.* DOE and the District Court concluded that Weirton Steel never possessed that claim in the first place, having relinquished it under the terms of its 1983 agreement with NSC. We agree.

"The gravamen of [Mittal's] case is that the 1983 Agreement between Weirton Steel and NSC transferred any interest in a refund for Weirton facility purchases to Weirton Steel, even though neither party to the Agreement was aware of this transfer." *Id.* at 108. The District Court found that the plain language of the 1983 Agreement refuted Mittal's claim:

> Section 3.1 addresses the transfer of refunds or rebates and Section 7.2 assigns responsibility for proceedings based on facts prior to the purchase. Section 3.1 states in relevant part:
>
>> the Seller will retain for its own account any payments received from Columbia gas, Conrail or any other Person representing overcharges or refunds prior to the Purchase Date . . . . The Buyer will retain for its own account any payments received from Columbia Gas, Conrail or any other Person representing overcharges or refunds subsequent to the Purchase Date.
>
> Section 7.2 provides that "except as provided otherwise in this Article, the Seller will take full responsibility for . . . and retain any recovery from, all Proceedings which are not Pending Proceedings, to the extent such Proceedings involve claims based on facts occurring or existing prior to the Purchase Date." "Proceedings" are defined as "any claim of the Division against any Person . . . or any controversy or request

2

# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

**No. 06-5227**                                            **September Term, 2006**

for relief which may be sought in any . . . administrative agency." "Pending Proceedings" are defined as those listed in an Appendix to the Agreement. Claims for refunds from petroleum purchases for the Weirton facility are conspicuously absent from that list.

[Mittal] argues that Section 3.1 should not control, because the list of entities it includes refers explicitly to certain vendors. [Mittal] therefore concludes that the Seller only retains the right to recover from vendors and not from government agencies. This claim flies in the face of Section 3.1, which is *not* limited to vendors, but also includes "Persons," who are defined to include "an individual, a corporation . . . *or a government or any agency or political subdivision thereof*." Thus, the "plain meaning" of the Agreement clearly provides that DOE should be included as a "Person" from whom any overcharge refund would be retained by the Seller.

*Id.* at 109 (citations omitted). The District Court thus concluded that, "[s]ince the 1983 Agreement did not transfer any right to a restitutionary award to Weirton Steel, it follows that [Mittal] did not obtain this right when it bought Weirton Steel in 2004." *Id.* at 110.

Because we agree that the Agreement between Weirton Steel and NSC did not transfer the claim to any refund to Mittal's predecessor-in-interest, we affirm the judgment of the District Court.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or rehearing *en banc*. *See* FED. R. APP. P. 41(b); D.C. CIR. R. 41.

*Per Curiam*
**FOR THE COURT:**
Mark J. Langer, Clerk

By:

Michael C. McGrail
Deputy Clerk
